William Daniel KELLEMS, Appellant,

v.

Harold BUCHIGNANI et al., Appellees.

Court of Appeals of Kentucky.

Dec. 13, 1974.

Rehearing Denied March 7, 1975.

Anthony M. Wilhoit, Public Defender, Paul F. Isaacs, Asst. Public Defender, Frankfort, for appellant.

Ed W. Hancock, Atty. Gen., Mark F. Armstrong, Asst. Atty. Gen., Frankfort, for appellees.

JONES, Justice.

William Daniel Kellems appeals from an order of the Fayette Circuit Court denying his petition for a writ of habeas corpus. Kellems, by counsel, contended in the trial court, as he does here, that he was not competent to understand and comprehend the nature of the proceedings to have him extradited to the state of Arizona. In denying the petition for writ of habeas corpus the trial court noted that the demanding jurisdiction, the Arizona court, should conduct a complete mental examination in order to determine Kellem's competency to stand trial.

After a careful review of the records and the briefs, this court is of the opinion that the question of the mental competence of a fugitive in extradition proceedings is not relevant. Charlton v. Kelly, 229 U.S. 447, 33 S.Ct. 945, 57 L.Ed. 1274 (1913); State ex rel. Davey v. Owen, 133 Ohio St. 96, 12 N.E.2d 144 (1937).

The judgment is affirmed.

OSBORNE, C. J., and JONES, STEINFELD and STEPHENSON, JJ., concur.

PALMORE, J., dissents in a separate opinion in which REED, J., joins.

PALMORE, Justice (dissenting).

It is a statutory requirement of KRS 440.250 that the court before which a per-

son is brought following his arrest under an extradition warrant "shall inform him of the demand made for his surrender and of the crime with which he is charged, and that he has the right to demand and procure legal counsel; and if the prisoner or his counsel shall state that he or they desire to test the legality of his arrest, the judge of such court shall fix a reasonable time to be allowed him within which to apply for a writ of habeas corpus. When such writ is applied for, notice thereof, and of the time and place of hearing thereon, shall be given," etc. Above and beyond this statutory safeguard, however, surely it is elementary that constitutional due process prohibits the bundling up and shipment of a human being from one state to another without an opportunity to be heard, no matter how limited in scope the available defenses against it may be.

Here we find the highest court of a sovereign state in the year 1974 holding under a case decided by the United States Supreme Court in 1913, evidently because it has been blindly followed by a few other courts on sparse occasions since then, that whether the arrested person has sufficient mental capacity to understand or participate in such a hearing is not relevant!

One who does not have sufficient mental capacity to understand and participate in a proceeding being held for the purpose of depriving him of his liberty is no different from an unconscious person, and such incapacity is no different from physical absence. If he has no mind, in effect he is absent, and if it makes no difference, as the majority opinion holds, then it really makes no difference whether he has any hearing at all; and if that makes no difference it cannot logically or sensibly be said that he has any right to a hearing in the first place. This is where the majority opinion ends in a head-on collision with both the statute and the constitutional guaranties of due process.

"The only point in affording the arrested person the right to counsel would be so that counsel could represent him in testing the legality of his arrest. But such representation would be a farce if the arrested person were so mentally incompetent that he could not understand the nature of the habeas corpus proceedings or assist counsel in testing the legality of the arrest. The statutory right to have the assistance of counsel would, in such a case, become a nullity. We shall not apply the law in such a manner that an express and unambiguous statutory right has no meaning." Kostic v. Smedley, Alaska, 522 P.2d 535, 537 (1974).

It was observed in Luker v. Koch, 176 Colo. 75, 489 P.2d 191, 193 (1971) that the competency of the prisoner usually has no bearing on the narrow issues involved in an extradition proceeding, and that the "only conceivable situation in which a court in the asylum state might be required to consider sanity would be one in which the petitioner is so incompetent as to be totally unable to assist his counsel in a habeas corpus proceeding . . . ."

The issue here is whether that "only conceivable situation" is presented by this case, and obviously it is. I agree that the degree of mental competence necessary in order for the prisoner to participate rationally in an extradition proceeding is, by reason of the limited nature of the issues, far less than what would be required in a defense of the criminal charges pursuant to which his extradition is sought. I do believe, however, that he must have a sufficient competence to know his own identity and to comprehend the information KRS 440.250 requires the court to give him. Otherwise, why require any hearing?

I would remand this proceeding with directions that the trial court conduct an evidentiary hearing for the purpose of determining whether the appellant possesses that minimal competence. If he does not, the law provides ample means by which he may be committed to a mental institution until he becomes able to defend himself.

REED, J., joins in this dissenting opinion.