■ In the Matter of HAYWARD NEWCOMB, Petitioner, v NEW YORK STATE BOARD OF PAROLE, Respondent. (Proceeding No. 1.) In the Matter of HAYWARD NEWCOMB, Appellant, v NEW YORK STATE BOARD OF PAROLE, Respondent. (Proceeding No. 2.) — Proceeding pursuant to CPLR article 78 (transferred to this court by order of the Supreme Court at Special Term, entered in Albany County) to review a determination made following petitioner's final parole revocation hearing before the New York State Board of Parole. Appeal, in Proceeding No. 2, from a judgment of the Supreme Court at Special Term (Pitt, J.), entered January 27, 1981 in Albany County, which dismissed petitioner's application, in a proceeding pursuant to CPLR article 78, to vacate the denial of petitioner's release on parole by the New York State Board of Parole. Petitioner was convicted of various felonies in 1959 and 1960 and was imprisoned with a maximum expiration date on his sentences of October 15, 1984. After serving approximately 10 years in Dannemora State Hospital, he was transferred to Clinton Correctional Facility and then paroled on May 31, 1972. On July 1, 1975, petitioner was taken into custody on charges of three parole violations: (1) failure to report to his parole officer; (2) failure to secure employment; and (3) behavior which had become a menace to the safety of his family and others. After administrative and judicial proceedings relative to petitioner's parole revocation, a final parole revocation hearing was scheduled for September 20, 1977. At this hearing, the board refused to proceed since the mental competency of petitioner was in doubt, and it questioned its authority to determine such competency. After further judicial proceedings, this court held in *People ex rel. Newcomb v Metz* (64 AD2d 219) that the due process standard of fundamental fairness requires the board when conducting parole revocation proceedings to consider a parolee's mental competency, among all other relevant factors, in making its parole determination. The court further stated that a determination of mental competency is not a condition precedent to a parole revocation proceeding, but mental capacity is a factor to be considered as possibly mitigating or excusing the charged violations (*People ex rel. Newcomb v Metz, supra*, p 223). In accordance with the above decision, a final parole revocation hearing was held on May 24, 1979, and a decision sustaining charges one and two and revoking petitioner's parole was rendered on July 9, 1979. Petitioner's first proceeding seeks a review of this determination and was transferred to this court. On January 28 and 29, 1980, a parole consideration hearing was held, and the board denied release and ordered that petitioner be held for its January, 1981 meeting. Petitioner then commenced an article 78 proceeding (Proceeding No. 2) to vacate this denial of release on parole. This petition was dismissed and petitioner appealed to this court. On September 17, 1981, petitioner was reparoled and is currently under the supervision of the Poughkeepsie area parole office. Preliminarily, respondent argues that petitioner's release on parole in September, 1981, moots this case. Contrary to this argument, the Court of Appeals has held that "the impact of the parole violation charges does not end with petitioner's release from prison, but may continue to affect matters such as the maximum parole expiration date" (*Lindsay v New York State Bd. of Parole*, 48 NY2d 883, 884). Accordingly, this case is not moot. It is undisputed that petitioner suffers from mental

illness and has been diagnosed as a paranoid schizophrenic. On this proceeding and appeal, petitioner again contends that his mental illness rendered him incompetent to participate in his parole revocation proceedings and, therefore, it was a denial of due process to hold the proceedings. This issue was decided in petitioner's prior appeal, where this court held that a determination of mental competency was not a precondition to parole violation proceedings (*People ex rel. Newcomb v Metz, supra,* p 223). Rather, a parolee's mental illness was one factor that might mitigate or excuse parole violations (*id.*). The issue presented here, therefore, distills to whether the board acted in conformity with this court's prior decision or whether its actions were arbitrary. In this regard, the board has broad discretion in determining whether to grant or deny parole (Executive Law, § 259-c, subd 2; § 259-i, subd 5; *Matter of Lynch v New York State Div. of Parole,* 82 AD2d 1012, 1013; *People ex rel. Newcomb v Metz, supra,* p 223), and there is no constitutional right to parole (*Matter of Russo v New York State Bd. of Parole,* 50 NY2d 69). Constrained by our very limited scope of review, we are unable to conclude that the board's action, after it duly considered testimony concerning petitioner's mental illness, should be disturbed. We note, however, that preferable dispositions in this tragic case could have been made. The board may exercise its authority to direct that the parole violator be restored to supervision (Executive Law, § 259-i, subd 3, par [f], cl [x]) and to make psychiatric treatment or admission to a hospital for the mentally ill in the Department of Mental Hygiene a condition of parole (*People v Ainsworth,* 32 AD2d 839; cf. Correction Law, § 404, subd 1). Determination, in Proceeding No. 1, confirmed, and petition dismissed, without costs. Judgment, in Proceeding No. 2, affirmed, without costs. Sweeney, J. P., Kane, Casey, Weiss and Levine, JJ., concur.