[1 NYS3d 771]

THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, v KENT FANN, Defendant. THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, v ROBERT BRISKEN, Defendant.

Supreme Court, Queens County, January 20, 2015

APPEARANCES OF COUNSEL

*Sean McNicholas* for Kent Fann, defendant.

*Randy Alpert* for Robert Brisken, defendant.

*Gregory Kuziw* for Department of Probation.

*Richard A. Brown, District Attorney* (*Deborah Wassel* of counsel), for plaintiff.

## OPINION OF THE COURT

DOUGLAS S. WONG, J.

These two cases have been consolidated for motions by all parties. They present the same issue to this court. Each defendant was convicted of a misdemeanor and sentenced to probation. A violation of probation (hereafter VOP) was filed on each case by the Department of Probation. Defense counsels on each case requested that the defendant be examined pursuant to CPL 730.30. Both Brisken and Fann were found unfit to proceed. By statute they were ordered to be committed to the custody of the Commissioner of Mental Hygiene. (CPL 730.40 [1]; 730.50 [1].) The remaining question is whether, pursuant to CPL 730.50 (1) (b), the misdemeanor charges must now be dismissed. The prosecution and the Department of Probation argue that since the finding of "unfitness" took place in a post-conviction context, the CPL 730.50 (1) (b) requirement to dismiss the misdemeanor charges does not apply. The defense counters that CPL 730.40 and 730.50 do require dismissal of misdemeanor charges after a finding of unfitness. The defense cites to *People v Concepcion* (41 Misc 3d 1 [2013]), which extended CPL 730.30 to postconviction VOP hearings. This issue presented on both cases is new and has not been ruled upon by any court.

*People v Brisken*

Mr. Brisken, 67 years old, was convicted of attempted criminal sex act in the third degree (an A misdemeanor). His original charges included felony and misdemeanor counts involving sex crimes with a 15-year-old victim. He was sentenced on March 31, 2014 to six years' probation after completing 52 sessions of a sex offender program. As a result of this conviction, he also had to comply with the Megan's Law statute for registration and reporting as a sex offender. (*See* Correction Law § 168.)

A VOP was filed two months later with a specification that the defendant had been arrested for criminal contempt in the second degree, by violating an order of protection with the same 15-year-old victim.

The defense attorney requested a CPL 730.30 exam. Defendant exhibited signs of mental distress before the court. This court ordered the examination pursuant to CPL 730.30. During the interim, court staff inquired of the original prosecutor as to whether a Megan's Law hearing had been conducted and whether the defendant had received a sex offender designation. Neither was reflected in the court file.

The results of the CPL 730.30 examination found the defendant unfit to proceed. Since Mr. Brisken's probation resulted from a misdemeanor charge, on defense motion, the court committed the defendant to the custody of the Commissioner of Mental Hygiene and dismissed the misdemeanor charges against the defendant pursuant to CPL 730.50.

Subsequently, the original prosecutor informed the court that the Megan's Law hearing had been adjourned a number of times and had not yet been completed and no sex offender designation had been adjudicated. When the court staff apprised the prosecutor of the finding of unfitness, and the dismissal of the misdemeanor charge, the prosecutor raised the issue of whether the dismissal was in error because the examination pursuant to CPL 730.30 was conducted in a postconviction context. The prosecutor argued that the dismissal statute only applied to prejudgment cases. He requested time to file motions on this issue.

*People v Fann*

On July 1, 2014, shortly after the Brisken case, a VOP was filed against Kent Fann. The defendant was convicted of criminal mischief in the fourth degree and was sentenced to three years' probation with a special condition to comply with a mental health program. Mr. Fann had a long history of mental health issues, including having two prior cases dismissed due to defendant's mental disease or defect.

Here, Mr. Fann was originally charged with criminal mischief in the third degree for throwing a metal garbage can at the door and window of a T-Mobile store, and thereby causing damage. After the original arraignment on the criminal mischief case, a CPL 730.30 exam was ordered and defendant was found unfit to proceed. He was ordered into the custody of

the Commissioner of Mental Hygiene for treatment. He was later found fit to proceed and returned to court. Subsequently, defendant pleaded guilty to criminal mischief in the fourth degree (an A misdemeanor) and was sentenced to three years' probation with a condition to complete a mental health program.

The specifications on the VOP included a failure to attend two mental health programs and a new arrest for assault.

When produced before this court, Mr. Fann shouted incoherently. Defense counsel requested a CPL 730.30 exam. This court ordered the examination. Mr. Fann refused to be interviewed for the examination. A second examination was ordered by this court, and the defendant was found unfit to proceed. The court ordered Mr. Fann into the custody of the Commissioner of Mental Hygiene for treatment.

This court then informed both parties on the Fann case of the issue raised in the Brisken case, i.e., whether CPL 730.50 required dismissal of the misdemeanor charges against Mr. Fann. After some discussion, a supervisor from the Queens District Attorney's Office was contacted. The supervisor requested permission to have one prosecutor handle the motions on both cases. The Department of Probation also wanted to file motions. A motion schedule was set by this court.

Discussion

CPL 730.30 reflects the long-established principle that due process requires a defendant not be tried for a crime if that person is "incapacitated." (CPL 730.30 [1].) The statute defines "[i]ncapacitated" as lacking the "capacity to understand the proceedings against [the defendant] or to assist in [the defendant's] own defense." (CPL 730.10 [1].) In essence, the statute ensures that the defendant should understand the charges, the role of all parties, be able to assist the defense attorney, and be able to testify at trial or a hearing, if appropriate.

CPL 730.30 applies "[a]t any time after a defendant is arraigned . . . and before the imposition of sentence." (CPL 730.30 [1].) From the specific language of the statute, it seems not to apply to postconviction proceedings. Evidently, numerous courts previously held the statute did not apply to a VOP hearing. (*See Matter of Newcomb v New York State Bd. of Parole*, 88 AD2d 1098, 1099 [3d Dept 1982], *lv denied* 57 NY2d 605 [1982], *cert denied* 459 US 1176 [1983]; *see also People ex rel. Porter v Smith*, 71 AD2d 1056 [4th Dept 1979].)

However, in *Matter of Lopez v Evans*, the First Department held that due process required that a defendant be "fit" and "competent" to proceed on a parole hearing. (104 AD3d 105, 110 [1st Dept 2012].) The First Department held that due process did not permit a parole revocation hearing to commence against a defendant who is incapacitated. That Court urged statutory guidance by the legislature on this issue. (*Matter of Lopez v Evans*, 104 AD3d 105, 109 [1st Dept 2012] ["it would be beneficial for the legislature to enact procedures and schedules to govern competency issues in parole revocation proceedings"].) The First Department agreed with, and extensively quoted, the holdings by courts in Indiana ("Without competency, the minimal due process rights guaranteed to probationers at probation revocation hearings would be rendered useless") and Ohio ("the effectiveness of the minimal [due process] standards enumerated in *Morrissey* . . . may be rendered null if the defendant is not competent to understand and to participate in or to assist counsel in participating in the proceedings"). (*See Donald v State*, 930 NE2d 76, 80 [Ind Ct App 2010]; *State v Qualls*, 50 Ohio App 3d 56, 58, 552 NE2d 957, 960 [1988].)

Only a year later, in 2013, the Appellate Term, Second Department, in *People v Concepcion*, extended this due process protection to a defendant facing a VOP hearing. (41 Misc 3d 1 [2013].) The court held that "the considerations underlying the determination in *Lopez* are equally applicable to probation violation proceedings and that [due process requires] an alleged violation of probation . . . not be adjudicated while a defendant is incompetent." (*People v Concepcion*, 41 Misc 3d 1, 4-5 [App Term, 2d Dept, 9th & 10th Jud Dists 2013].) The Appellate Term held that a CPL 730.30 exam to determine defendant's fitness to proceed is appropriate in a postconviction proceeding on a VOP. This is true even though the language of the CPL 730.30 statute specifically applies only to prejudgment (preconviction) settings. Prior to this, only lower courts had endorsed this view. (*See Matter of Tompkins*, 146 Misc 2d 754 [Montgomery County Ct 1990].)

Both defense counsels argue that since *Concepcion* authorizes a CPL 730.30 exam to determine fitness to proceed in the post-conviction context of a VOP, then the provisions of CPL 730.40 and 730.50 should also apply after a finding of defendants' unfitness. This would require the court to dismiss the misdemeanor charges against the defendants even though this is a postconviction finding.

The prosecution and the Department of Probation argue that CPL 730.40 and 730.50 only apply to prejudgment situations, not postconviction procedures, by the language of the statutes. They argue that *Concepcion* should not be extended to these statutes. They also argue that conditions of probation (such as orders of protection, drug and sex offender programs) as well as collateral consequences (such as Megan's Law sex offender registration) would all be cancelled or voided if the misdemeanor charges were dismissed. They claim this was not the intent of the legislature in enacting these statutes. They also propose that, if anything, CPL 730.40 and 730.50 only apply to the specifications filed on the VOP, not the actual convictions. In other words, they propose that the declaration of delinquency and list of specifications are the "accusatory instruments," under CPL 730.40 and 730.50, that should be dismissed.

This court has reviewed the relevant statutes and case law as well as the motions submitted by both sides.

CPL 730.50 is applicable only to "Criminal action[s]" defined in CPL 1.20 (16) as "commenc[ing] with the filing of an accusatory instrument . . . and (c) terminat[ing] with the imposition of sentence or some other final disposition." (CPL 1.20 [16] [a]-[c].) A VOP proceeding is not a "criminal action" under this definition, since the defendant has pleaded or been found guilty and sentenced on the accusatory instrument. (*Matter of Darvin M. v Jacobs*, 69 NY2d 957, 959 [1987].) In *Matter of Darvin M. v Jacobs*, the Court of Appeals made clear that a " 'criminal action' " terminates upon sentencing, and distinguished this from a probation revocation proceeding. (*Id.* ["A probation revocation . . . is a 'criminal proceeding' brought after the . . . 'criminal action' (is completed)"].)

CPL 1.20 (1) contains a list of eight documents which may be identified as "accusatory instruments." The documents which initiate a VOP proceeding, a declaration of delinquency and a list of specifications, are not included in the list of documents which constitute an "accusatory instrument" in that section. The legal maxim "expressio unius est exclusio alterius" can be understood as follows—"An enumerated list warrants an irrefutable inference that omitted items were intentionally excluded." (*See* McKinney's Cons Laws of NY, Book 1, Statutes § 240 [emphasis omitted]; *see also Matter of Mayfield v Evans*, 93 AD3d 98, 106 [1st Dept 2012].) The absence of a declaration of delinquency and specifications in the list of accepted "ac-

cusatory instruments" indicates that the former are not members of the latter.

During the pendency of a "criminal action" a defendant is cloaked in the presumption of innocence. If a defendant is found unfit to proceed after a CPL 730.30 exam on misdemeanor charges, then CPL 730.50 allows the court to dismiss those charges. This is the resulting outcome because the presumption of innocence cannot be overcome in the absence of a valid proceeding.

However, once the defendant has been convicted and sentenced, in these cases to probation, the defendant's presumption of innocence has ended. Therefore, any dismissal of the misdemeanor charges under CPL 730.40 or 730.50 is not authorized by these statutes.

In *People v Concepcion*, the Appellate Term held that the defendant was entitled to competency before being subjected to a violation of probation hearing, as a matter of due process. The court, citing *Lopez*, compared this to the basic requirements of due process applicable to a parole revocation hearing. By due process, the courts held that the defendant had to be competent to assist his attorney at the hearing, understand the charges, and be able to testify, if appropriate. Certainly these due process arguments are not applicable to the dismissal requirements for misdemeanors under CPL 730.40 and CPL 730.50.

As the Department of Probation and prosecution point out, probation sentences can include conditions of probation as well as collateral consequences. Conditions of probation could include fines, restitution, and orders of protection. They could also require programs for sex offenders, anger management, domestic violence, drugs and alcohol, drunk driving, etc. Collateral consequences could include Megan's Law sex offender registration, driver's license suspensions, etc. All of these are, in some form, intended either to continue to supervise and rehabilitate the defendant and/or to prevent recidivism. They are also designed to protect victims of crimes such as domestic violence, and sex abuse.

Yet, if CPL 730.40 and 730.50 required dismissal of the misdemeanor charges after a finding of defendants' unfitness, all of these protective conditions and consequences would disappear. There would no longer be orders of protection or restitution for the victims, Megan's Law registration for sex offenders, driver's license suspensions for drunk drivers, etc. Clearly this could not have been the intent of the legislature by enacting these statutes.

In fact, the legislature passed statutes subsequent to CPL 730.40 and 730.50 designed, in certain misdemeanor and felony crimes, to increase probation periods and supervision of a defendant (*see* Penal Law §§ 65.00 [sexual assault crimes, public lewdness], 130.00, 263.00, 255.25, 255.26, 255.27). They also passed statutes, in certain misdemeanor and felony crimes, to increase the duration of orders of protection for victims (*see* CPL 530.13). It could not have been the intent of the legislature, under CPL 730.40 and 730.50, to require dismissal of misdemeanor convictions, and to have these lengthy probation and orders of protection periods disappear upon a finding of a defendant's unfitness. Similarly, a defendant would not have to register under the Megan's Law sex offender statute if certain misdemeanor sex offense convictions were dismissed under these sections. (Also, a defendant would no longer have his driver's license suspended if the charges on a DWI were dismissed.)

Therefore, this court rules that CPL 730.40 and 730.50 do not apply to require dismissal of misdemeanor convictions on VOP proceedings where a defendant is found unfit to proceed after a CPL 730.30 exam.

Without guidance from statutory authority or case law, what procedures should be followed after a defendant is found unfit in these instances and committed to the custody of the Commissioner of Mental Hygiene? This court would suggest that logically the following should take place: The same procedures outlined for felonies should be followed for misdemeanors under CPL 730.50. If the defendant continues to be "incapacitated" for two thirds of the maximum time period of the statutory authorized term of imprisonment on the highest misdemeanor charge (under an A misdemeanor—one year), then the VOP proceeding only should be dismissed, not the misdemeanor charges themselves. This would leave intact any conditions or collateral consequences of probation such as orders of protection for the victims, and Megan's Law registration for sex offenders.* Then the Commissioner of Mental Hygiene would decide if a "civil commitment" proceeding was appropriate.

If the defendant after treatment was found "fit" to proceed by the Commissioner, before two thirds of the maximum jail time is served, the defendant would be returned to court to continue

---

* The 90-day hold requirements under CPL 730.40 (1) and 730.50 (1) would not apply for the Commissioner of Mental Hygiene since the court holds these statutes do not apply on postconviction misdemeanors.

with the VOP proceeding. At that time the Department of Probation could decide on a case by case basis whether they could proceed on the VOP or not. It may well be that some, or all, of the specifications of the VOP were a result of defendants' "unfitness." It may also be the case that defendants were "fit" when some, or all, of the specifications allegedly occurred, so Probation could proceed on the VOP. It would appear that this needs to be done on a case by case basis, not as a blanket dismissal as Probation and the prosecution suggest.

If, for example, the Department of Probation determines that all of the specifications on the VOP were due, originally, to defendant's mental state of unfitness, they could request that defendant be restored to probation. Then the defendant would have to comply with the remaining supervision and any conditions of probation, and any collateral consequences of conviction would remain.

If, on the other hand, the Department of Probation determines that some, or all, of the specifications are viable despite the subsequent finding of unfitness, they could proceed on those specifications with the VOP hearing.

Therefore, this court's previous decision to dismiss the misdemeanor charges against Mr. Brisken is vacated.

The motion to dismiss Mr. Fann's misdemeanor conviction is denied.